*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  10a0366a.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

HARRY MITTS,

          *Petitioner-Appellant,*

    *v.*

MARGARET BAGLEY, Warden,

          *Respondent-Appellee.*

No. 05-4420


Filed:  December 3, 2010

Before:  MERRITT, MARTIN, and SILER, Circuit Judges.

_____

**AMENDED ORDER**

_____


The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active[*] judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case.  Accordingly, the petition is denied.

_____

[*] Judge Cook recused herself from participation in this ruling.

SUTTON, Circuit Judge, with whom KETHLEDGE, Circuit Judge, joins, concurring.  This en banc petition illustrates a tension that occasionally arises on the courts of appeals between two objectives:    (1) deciding cases correctly and (2) delegating to panels of three the authority to decide cases on behalf of the full court.

1.  With all respect to the panel majority, this case was not decided correctly.  At issue was the validity of the following Ohio jury instruction given at the penalty phase of a capital case:

> [Y]ou must determine beyond a reasonable doubt whether the aggravating circumstances, which the defendant, Harry D. Mitts, Jr., was found guilty of committing in the separate counts, are sufficient to outweigh the mitigating factors you find are present in this case.
>
> When all 12 members of the jury find by proof beyond a reasonable doubt that the aggravating circumstances in each separate count with which Harry D. Mitts, Jr., has been found guilty of committing outweigh the mitigating factors, if any, then you must return such finding to the Court.
>
> I instruct you as a matter of law that if you make such a finding, then you must recommend to the Court that the sentence of death be imposed on the defendant Harry D. Mitts, Jr.
> . . .
> On the other hand, [if] after considering all the relevant evidence raised at trial, the evidence and testimony received at this hearing and the arguments of counsel, you find that the state of Ohio failed to prove beyond a reasonable doubt that the aggravating circumstances with which the defendant Harry D. Mitts, Jr., was found guilty of committing outweigh the mitigating factors, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court.

*Beck v. Alabama*, 447 U.S. 625 (1980), does not invalidate this instruction.  *Beck* faulted Alabama for declining to give the jury a lesser-included option at the *guilt* phase of a capital trial—for "not permitt[ing]" a jury "to consider a verdict of guilt of a lesser included non-capital offense," even "when the evidence would have supported such a verdict."  *Id.* at 627.  By "fail[ing] to give the jury the 'third option' of convicting on a lesser included offense," *id.* at 637, and leaving the jury only with "the choice of either

convicting the defendant of the capital crime, in which case it is required to impose the death penalty, or acquitting him, thus allowing him to escape all penalties for his alleged participation in the crime," *id.* at 628–29, Alabama violated due process because it "enhance[d] the risk of an unwarranted conviction," *id.* at 637–38, and "interject[ed] irrelevant considerations" into the guilt determination, *id.* at 642.

No such problem arises at the *penalty* phase of a capital trial. If an Ohio jury convicts a defendant of a capital offense, the jury instructions, as one might expect, give the jury two general options: life or death. This approach leaves no risk of an "unwarranted *conviction*," 447 U.S. at 638 (emphasis added), or any risk that the jury will take into account considerations that are "irrelevant" to guilt, such as letting the jury's view of whether death or life is appropriate factor into its guilt or innocence determination, *id.* at 640, 642. By the penalty stage in the case, no such concerns exist. I thus agree with Judge Siler that *Beck* does not apply. *Mitts v. Bagley*, 620 F.3d 650, 664 (6th Cir. 2010) (Siler, J., concurring in part and dissenting in part).

Don't take our word for it, however. Read *Beck*, which distinguished other decisions on this ground. Explaining the difference between the Alabama statute and the Georgia-post-*Furman* statute upheld in *Gregg v. Georgia*, 428 U.S. 153 (1976), *Beck* says: "Under a statute like Georgia's, where guilt is determined *separately* from punishment, there is little risk that the jury will use its power to decide guilt to make a *de facto* punishment decision." 447 U.S. at 641 n.17 (emphasis added).

Even if we focus only on the penalty phase of the trial, Mitts complains that the instructions "require the jury as a first step, before considering mercy, to make a decision" about whether to recommend a death sentence. *Mitts*, 620 F.3d at 657. That is not a fair reading of the instructions, however, which ask two questions: whether to recommend a death sentence because the aggravating factors outweigh the mitigating factors or whether, "[o]n the other hand," to recommend one of two types of jail sentences because the aggravating factors do not outweigh the mitigating factors. Even if this were not the case, it would not help Mitts. *Kansas v. Marsh* allowed a State, unlike Ohio, to require a jury to return a death sentence if the jury found the mitigating

factors did not outweigh the aggravating factors.  548 U.S. 163, 171 (2008) ("So long as the sentencer is not precluded from considering relevant mitigating evidence, a capital sentencing statute cannot be said to impermissibly, much less automatically, impose death.").

One cannot sidestep these conclusions with labels, by calling the Ohio instruction an "acquittal-first" jury instruction, Mitts Opposition to Rehearing En Banc at 2, or by stamping "mandatory death penalty instruction" on the Ohio instruction, *Mitts*, 620 F.3d at 655.  That is wordsmanship.  As the terms of the instruction show, it was not an "acquittal-first" instruction.  The jury received the instruction at the penalty phase of the case, only after it had an opportunity to acquit the defendant and only after it chose not to do so under a different set of instructions.  Nor was it a "mandatory death penalty instruction."  A penalty-phase instruction that presents two options to the jury—either that the aggravating factors outweigh the mitigating factors (warranting a death-penalty recommendation) or, "on the other hand," that the mitigating factors outweigh the aggravating factors (warranting a life sentence or less)—no more mandates death than it mandates life.

A proper reading of *Beck*, however, is not Mitts' only problem.  This habeas petition was filed after the Antiterrorism and Effective Death Penalty Act became law. Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Both parties, as well as all four Article III judges who have reviewed this case, agree that the AEDPA standard of review applies, a requirement that lengthens and steepens Mitts' climb.  It is difficult enough to say that *Beck*, a case about guilt-phase jury instructions and lesser-included offenses, applies to a penalty-phase jury instruction that has nothing to do with lesser-included offenses and convictions.  But for Mitts to say that this instruction was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), gives a bad name to the inventive mind.  At a minimum, it is reasonable to conclude that *Beck* does not apply to a penalty-phase jury instruction, where the possibility of an "unwarranted conviction," 447 U.S. at 638, does not exist.

One final straw: a 2010 decision of the Supreme Court *upholds* this instruction in the face of the same argument. At issue in *Smith v. Spisak*, 130 S. Ct. 676 (2010), was the following jury instruction, which in all relevant particulars mirrors the *Mitts* jury instruction:

> [Y]ou, the trial jury, must consider all of the relevant evidence raised at trial, the evidence and testimony received in this hearing and the arguments of counsel. From this you must determine whether, beyond a reasonable doubt, the aggravating circumstances, which [Spisak] has been found guilty of committing in the separate counts are sufficient to outweigh the mitigating factors present in this case.
>
> If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstance in each separate count outweighs the mitigating factors, then you must return that finding to the Court. .....
> On the other hand, if after considering all of the relevant evidence raised at trial, the evidence and the testimony received at this hearing and the arguments of counsel, you find that the State failed to prove beyond a reasonable doubt that the aggravating circumstances which [Spisak] has been found guilty of committing in the separate counts outweigh the mitigating factors, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court.

Spisak first challenged this instruction on the ground that it "required the jury to consider in mitigation *only* those factors that the jury *unanimously* found to be mitigating," allegedly in violation of *Mills v. Maryland*, 486 U.S. 367 (1988). *Spisak*, 130 S. Ct. at 680. Because the instructions "focused only on the overall balancing question," not on whether "the jury must determine the existence of each individual mitigating factor unanimously," the Court held that these instructions did not "clearly" violate *Mills*. *Id.* at 684.

The Court then rejected the Sixth Circuit's invalidation of the jury instruction on an alternative ground, the same ground presented here. Speaking for eight Justices, Justice Breyer said:

> We add that the Court of Appeals found the jury instructions unconstitutional for an additional reason, that the instructions "require[d] the jury to unanimously reject a death sentence before considering other

sentencing alternatives."  465 F.3d at 709 (citing *Maples v. Coyle*, 171 F.3d 408, 416-17 (CA6 1999)).  We have not, however, previously held jury instructions unconstitutional for this reason.  *Mills* says nothing about the matter.  Neither the parties nor the courts below referred to *Beck v. Alabama*, 447 U.S. 625 (1980), or identified any other precedent from this Court setting forth this rule.  Cf. *Jones v. United States*, 527 U.S. 373, 379-384 (1999) (rejecting an arguably analogous claim).  But see *post*, at 688–93 (Stevens, J., concurring in judgment).  Whatever the legal merits of the rule or the underlying verdict forms in this case were we to consider them on direct appeal, the jury instructions at Spisak's trial were not contrary to "clearly established Federal law."  28 U.S.C. § 2254(d)(1).

130 S. Ct. at 684.

At least three relevant points emerge from this feature of *Spisak*, all problematic for Mitts.  One, *Spisak* considered the ground on which the panel relied here.  Just as *Spisak* considered whether it is improper for an instruction to "require[] the jury to unanimously reject a death sentence before considering other sentencing alternatives," 130 S. Ct. at 684, the *Mitts* panel considered whether it is improper for an instruction to say that the jury "must . . . address[] first" a death sentence "before consideration is given to life imprisonment," 620 F.3d at 652.  Two, *Spisak* found no support for the argument.  "We have not," the Court held, "previously held jury instructions unconstitutional for this reason." 130 S. Ct. at 684.  Three, invoking AEDPA, *Spisak* concluded: "Whatever the legal merits of the rule or the underlying verdict forms in this case were we to consider them on direct appeal, the jury instructions at Spisak's trial were not contrary to 'clearly established Federal law.'" *Id.*

That Justice Stevens concurred separately in the judgment, concluding that this jury instruction violates *Beck* but finding the error harmless, undermines rather than aids Mitts' argument.  As the above quotation and its citation to Justice Stevens' concurrence establishes, the eight-member majority in *Spisak* found no support for Justice Stevens' reading of the *Beck* rule ("We have not, however, previously held jury instructions unconstitutional for this reason."), and held that this reading did not provide a basis for relief ("Whatever the legal merits of the rule . . . were we to consider them on direct

appeal, the jury instructions at Spisak's trial were not contrary to 'clearly established Federal law.'").

What was true for Spisak is true for Mitts. Same instructions, same argument, same conclusion: No clearly established due process violation occurred. To see it otherwise is to believe that Spisak himself retains the right to obtain relief under this same argument. Yet I doubt that anyone thinks that is true.

2. All of this shows why I disagree with the panel majority's assessment of the merits of Mitts' argument. What to do about it is another matter. While the Federal Rules of Appellate Procedure provide one option—en banc rehearing—it is not a preferred one. En banc rehearing is "not favored and ordinarily will not be ordered." Fed. R. App. P. 35(a). "The decision to grant *en banc* consideration is unquestionably among the most serious non-merits determinations an appellate court can make, because it may have the effect of vacating a panel opinion that is the product of a substantial expenditure of time and effort by three judges and numerous counsel. Such a determination should be made only in the most compelling circumstances." *Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1243–44 (D.C. Cir. 1987) (Edwards, J., concurring in the denial of rehearing en banc).

Most of the traditional grounds for full court review are not "compelling" here. There is no circuit split. No other circuit to my knowledge (or for that matter to the parties' knowledge) has invoked this ground for relief or otherwise disagreed with it. This is not an important federal question, at least under Appellate Rule 35(a), since the Ohio courts stopped giving this instruction in 1996. *See Ohio v. Brooks*, 661 N.E.2d 1030 (1996). Although the State says that pending death-penalty habeas petitions presenting this issue remain, it has not told us the number of them, presumably because the schedule for seeking rehearing en banc leaves insufficient time to figure this kind of thing out. There is no intra-circuit conflict. In *Goff v. Bagley*, 601 F.3d 445 (6th Cir. 2010), it is true, the panel treated the capital inmate's *Beck* challenge as forfeited, *id.* at 459–60, and the *Mitts* panel chose to address the challenge under circumstances similar to *Goff*. But that intra-circuit inconsistency goes not to the merits of the *Beck* argument

but to a question that frequently calls for case-specific judgments that differ in degree but not in kind and that rarely warrant en banc review by themselves. Nor is this a case in which a large number of judges on the court have come to doubt the validity of our own precedent.

That leaves one other possibility—that disagreement with the panel's decision on the merits warrants en banc review. In the run-of-the-mine case that ground rarely suffices, else many cases a year would be decided in panels of 16, a rarely satisfying, often unproductive, always inefficient process. No one thinks a vote against rehearing en banc is an endorsement of a panel decision, as other judges have said and as my explanation in this case confirms. "By declining to rehear a case, we do not sit in judgment on the panel; we do not sanction the result it reached . . . [w]e decide merely that . . . review by the full court is not justified." *Bartlett*, 824 F.2d at 1244 (Edwards, J., concurring in the denial of rehearing en banc).

If the goal is to produce consistent and principled circuit law, moreover, it is fair to wonder whether a process that requires a majority of circuit judges to sit in judgment of two or three colleagues does more to help than to deter that objective, particularly when the central ground for review is mere disagreement on the merits. The judges of a circuit not only share the same title, pay and terms of office, but they also agree to follow the same judicial oath, making them all equally susceptible to error and making it odd to think of the delegation of decisionmaking authority to panels of three as nothing more than an audition. Saving en banc review for "the rarest of circumstances," particularly when the leading ground for review is disagreement on the merits, thus "reflects a sound, collegial attitude," one worth following here. *Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*, 863 F.2d 891, 925 (D.C. Cir. 1988) (R.B. Ginsburg, J., concurring in the denial of rehearing en banc). Skepticism about the value of merits-based en banc review reflects one other thing: We are not the only Article III judges concerned with deciding cases correctly. Sometimes there is nothing wrong with letting the United States Supreme Court decide whether a decision is correct and, if not, whether it is worthy of correction.

For these reasons, I concur in the denial of rehearing en banc.

MERRITT, Circuit Judge, concurring in the Court's action declining *en banc* review. I agree with Judges Sutton and Kethledge in their concurring opinion that my opinion for the panel in this Ohio death penalty case should not be vacated. Nevertheless, some of the language of the concurrence mischaracterizes the case and should be noted for the record. Justice Stevens in his concurring opinion did conclude, as stated in the concurrence, that the instant jury instruction violated *Beck v. Alabama*; but Justice Stevens did not "find the error harmless," as stated in page 6 of the concurring opinion. The concurring opinion also relates that the instruction in question is not an "acquittal first" instruction, but Justice Stevens states just the opposite view throughout his concurring opinion. Nor do I find, as stated by my concurring colleagues, that the majority in *Spisak* states anywhere that it had "considered the [*Beck v. Alabama*] ground" on which Justice Stevens relied in his concurring opinion. Rather, the majority of the court said: "Neither the parties nor the courts below referred to *Beck v. Alabama* . . ." and hence the majority does not appear to have considered Justice Stevens' argument on the merits. My panel opinion simply proposes that the law of the Sixth Circuit follow Justice Stevens' interpretation of the opinion that he wrote in *Beck v. Alabama*.

Although my concurring colleagues make it clear that they disagree with me in this case, they do not say whether they agree with Justice Stevens' concurring opinion or not. I have simply tried to follow closely Justice Stevens' interpretation of *Beck v. Alabama*, and his interpretation seems quite clear:

First, the jury instructions impermissibly require that the jury unanimously reject a death sentence before considering other sentencing options.

. . . .

The acquittal-first jury instructions used during Spisak's penalty phase interposed before the jury the same false choice that our holding in *Beck* prohibits. By requiring Spisak's jury to decide first whether the state had met its burden with respect to the death sentence, and to reach that decision unanimously, the instructions deprived the jury of a meaningful opportunity to consider the third option that was before it, namely, a life sentence. Indeed, these instructions are every bit as pernicious as those at issue in *Beck* because they would have resulted in a new trial and that, in any event, they could not give effect to their determination that a life sentence was appropriate unless and until they had first convinced each of their peers on the jury to reject the death sentence.

ENTERED BY ORDER OF THE COURT


/s/ Leonard Green

_____

Clerk