DANNY J. BOGGS, Circuit Judge,
dissenting.
I respectfully dissent from the court’s holding that, under AEDPA, the Michigan Court of Appeals unreasonably applied Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The lead opinion correctly agrees with the Michigan Court of Appeals that Edwards is the relevant binding Supreme Court precedent, but it incorrectly holds that the Michigan Court of Appeals unreasonably applied Edwards in this case. As the Supreme Court has repeatedly reminded this court of appeals,[1] a state-court determination is to be overthrown, and habeas granted, only when a trial proceeding has gone fundamentally awry and fairminded jurists could not dispute that the outcome was constitutionally invalid. See Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011); Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); see also Werth v. Bell, 692 F.3d 486, 495 (6th Cir.2012).
This decision-making principle holds just as much for a determination of whether a decision is an “unreasonable application” of clearly established federal law as it does for a determination of whether a decision is “contrary to” clearly established federal law. See Harrington, 131 S.Ct. at 785-86; Yarborough, 541 U.S. at 663-64, 124 S.Ct. 2140.
Here, the exact circumstances under which Moore conversed with Officer Gardner are controverted. It is clear that Moore asked the officer to call a particular attorney for him. The officer did so and truthfully reported that he was only able to get an answering service. Subsequent to that point, there are two possible interpretations of the record. One is that Moore, in effect realizing that his designated attorney was not available, decided that it would be in his best interest to talk anyway, and that he did so. The alternative view would be that Officer Gardner, having properly observed the correct protocol to this point, decided to badger Moore into talking. The Michigan Court *891 of Appeals, in the final reasoned opinion— with which we must deal — cited the state trial court’s finding that “the challenged statement was made only after defendant initiated further conversation with the police” and found that there was “no clear error in this factual determination.”
The appellate court’s judgment with respect to the somewhat murky record may be right or wrong on this point. However, I cannot find that this judgment was, in the words of Harrington, “so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 131 S.Ct. at 786-87.
As the lead opinion correctly states, the record before us does not affirmatively show “whether Moore or the officer initiated further communication following Moore’s request for counsel.” Maj. Op. at 888. But the Michigan Court of Appeals, again as the lead opinion states, found “that Moore had initiated further conversation with the officer.” Maj. Op. at 888 (emphasis added). While we have before us the same cold record that the Michigan Court of Appeals did, we possess neither the contextual insight that the Michigan Court of Appeals may have garnered from oral argument, nor that court’s familiarity with Michigan procedure. And the state trial court, on whose factual findings the Michigan Court of Appeals relies, actually heard the specific testimony in question. The trial court heard Moore’s claim that he made repeated requests for an attorney and that Gardner disregarded these pleas. It also heard not only Gardner’s contrary testimony, quoted by the lead opinion, that Gardner “asked [Moore] did he want to talk to [the officer] and [Moore] said yes he did,” Maj. Op. at 888, but also the context and circumstances attending this, at least slightly ambiguous, language.
More probing examination or cross-examination of Gardner might have elicited more specific answers to questions such as:
• Did Moore say anything indicating a desire to talk when you returned with the information that the attorney was not available?
• Did you ask about Moore’s desire to talk because you thought he had not invoked his right to counsel?
• Did you ask about Moore’s desire to talk only after there had been some intimation that he desired to talk?
• If so, what was that intimation?
In short, I agree that the record is subject to muddled interpretation. However, in the face of the flat statement by the Michigan Court of Appeals that the state trial court made a non-erroneous factual determination that Moore had appropriately initiated the conversation, I think that its judgment is not beyond fairminded disagreement. Under the Supreme Court’s AEDPA jurisprudence, therefore, I respectfully dissent.

. See, e.g., Parker v. Matthews, - U.S. -, 132 S.Ct. 2148, 2153, 2155, 183 L.Ed.2d 32 (2012) (ruling that “the Sixth Circuit overstepped the proper limits of its authority" by granting habeas relief, thus committing “plain and repetitive error"); Bobby v. Dixon, - U.S. -, 132 S.Ct. 26, 181 L.Ed.2d 328 (2011); Berghuis v. Thompkins, - U.S. -, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); Renico v. Lett, -U.S. -, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010); Berghuis v. Smith, 559 U.S. 314, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010); Smith v. Spisak, 558 U.S. 139, 130 S.Ct. 676, 175 L.Ed.2d 595 (2010).