[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10817

_____

D.C. Docket No. 1:10-cv-00439-KD-C

TIMOTHY W. SAUNDERS,

Petitioner - Appellant,

versus

WARDEN, HOLMAN CORRECTIONAL FACILITY,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(February 21, 2020)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and MARCUS, Circuit Judges.

PER CURIAM:

Timothy W. Saunders, an Alabama death row inmate, appeals the district

court's order denying his 28 U.S.C. § 2254 petition.  We affirm.

I.

In 2004, Saunders beat 77-year-old Melvin Clemons to death with a crowbar while robbing him and then burglarized his home. Saunders v. State, 10 So. 3d 53, 61, 67 (Ala. Crim. App. 2007). While inside, he also terrorized and attempted to kill Melvin Clemons' 74-year-old wife, Agnes Clemons. Id. She was able to grab a shotgun that was in the house and fire it at him, which chased him off. Id. at 64.

Saunders confessed to the police that he killed Melvin Clemons, attacked Agnes Clemons, and burglarized their home. Id. at 67. At the guilt stage of his trial, given his confession and other evidence, Saunders' counsel did not dispute that he had committed criminal acts. Id. at 92–93. Instead, counsel argued that Saunders could not form the specific intent to commit capital murder because he was under the influence of crack cocaine. Id. To convey that point, counsel asked Saunders questions that revealed Saunders used crack cocaine on the day of the murder. Id. Counsel also asked him to provide details about the brutal criminal acts he committed to show that they were out of character and that Saunders now accepted responsibility for them.[1] Id.

---

[1] For example, his trial counsel asked questions such as: "What did [Melvin] do to deserve [being hit with a crowbar]?" Saunders answered: "Nothing in this world." Counsel asked: "Then why did you hit [Melvin]?" Saunders answered: "I was scared, and when you're on crack, you're not thinking right." Counsel asked: "Do you realize how hard you hit [Melvin]?" Saunders replied: "Yes sir, I do now."

An Alabama jury convicted Saunders of two counts of capital murder and one count of attempted murder, and after a sentence hearing it unanimously recommended that he be sentenced to death. Id. at 61. The murder of Melvin Clemons was a capital murder both because it was committed during the course of a robbery and because it was committed during the course of a burglary. Id. The trial court adopted the jury's recommendation. Id. The Alabama Court of Criminal Appeals affirmed Saunders' convictions and death sentence, id., and the Alabama Supreme Court denied his petition for a writ of certiorari, Ex parte Saunders, No. 1070675 (Ala. Nov. 26, 2008). Saunders filed a series of post-conviction petitions in state court, all of which were denied.

Saunders also filed a federal habeas petition in the Southern District of Alabama in 2010, which he amended in 2017.[2] The district court addressed all of his claims and denied the petition. The court granted a certificate of appealability on only one of his claims, Claim 1.b of the amended petition, which asserted that his trial counsel was ineffective in how he executed the strategy of having Saunders testify during the guilt stage.[3]

---

[2] In 2010, Saunders filed a motion in the district court to stay his federal habeas proceedings pending the state courts' resolution of one of his post-conviction petitions and any related proceedings. The district court granted that motion and did not lift the stay until October 2017.

[3] The district court adopted the phrasing of Saunders' habeas counsel in describing the issue it granted a certificate of appealability on. The district court's order described the issue as being whether:

II.

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Williams v. Allen, 542 F.3d 1326, 1336 (11th Cir. 2008) (quoting Grossman v. McDonough, 466 F.3d 1325, 1335 (11th Cir. 2006)). Saunders contends that his trial counsel's guilt stage performance was constitutionally deficient and prejudicial under Strickland v. Washington, 466 U.S. 668 (1984). Strickland ineffective assistance of counsel claims are mixed questions of law and fact, so we review them de novo. See Williams, 542 F.3d at 1336.

III.

The phrasing of the claim before us broadly asserts that trial counsel was ineffective in executing his strategy to call Saunders during the guilt stage. As Saunders argued that claim before the district court, it had three separate components. First, he contended that trial counsel essentially caused him to concede guilt for capital murder, which he alleged is per se ineffective assistance of counsel. Second, he contended that trial counsel failed to adequately prepare

Mr. Saunders's trial counsel was ineffective during the guilt phase because even if trial counsel's decision to call Mr. Saunders to testify during the guilt phase was made for strategic reasons, trial counsel's execution of that decision was ineffective at best, and, at worst, tended to establish the inference that Mr. Saunders was guilty of capital murder.

4

him to testify.  Third, he contended that trial counsel elicited harmful information from him while failing to ask him more helpful questions about his mental state at the time he committed the crimes.

Only the last component is before us on appeal.  Saunders did not argue in his initial brief to this Court that his trial counsel was per se ineffective by causing him to concede guilt for capital murder or that his trial counsel failed to adequately prepare him before he took the stand.  As a result, he has abandoned those arguments and we will not address them.  See Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1300 (11th Cir. 2014) ("Although the COA we granted is broad enough to encompass that claim, . . . [the inmate] has abandoned it by failing to 'plainly and prominently' argue [it] on appeal . . . ."); see also United States v. Jim, 891 F.3d 1242, 1252 (11th Cir. 2018) (holding that issues not raised in appellant's opening brief are abandoned).[4]

Because the Alabama Court of Criminal Appeals denied on the merits Saunders' argument that his trial counsel ineffectively questioned him about the

---

[4] We do not mean to imply that if we did address the other two contentions we would find any merit in them.  We would reject them for the same reasons the district court did.  See Doc. 51 at 22–28.  The Supreme Court has held that an attorney is not per se ineffective for adopting a strategy to concede guilt, even if his client does not expressly consent to that strategy.  See Florida v. Nixon, 543 U.S. 175, 191–92 (2004).  Only if a client objects to the concession is there structural error.  See McCoy v. Louisiana, 138 S. Ct. 1500, 1508–10 (2018).  Here, there is no evidence Saunders objected to his trial counsel's strategy of conceding that Saunders committed the criminal acts.  Because he did not object to his trial counsel's strategy, and because of the overwhelming evidence of his guilt, the district court concluded that the state court's rejection of this claim was not contrary to federal law or unreasonable under Strickland.  See Doc. 51 at 27–28.

crimes and his mental state, our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996. See 28 U.S.C. § 2254. Under AEDPA, we may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

That standard is difficult to meet. See Burt v. Titlow, 571 U.S. 12, 19 (2013) ("AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."). And it was intended to be. Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018) ("We have often emphasized that this standard is difficult to meet because it was meant to be.") (quotation marks omitted); accord Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) ("This is meant to be a difficult standard to meet.") (quotation marks omitted).

And it is even more difficult to meet AEDPA's standard when the claim is one of ineffective assistance of counsel. To prevail on a Strickland claim, an inmate must show both (1) that his counsel's performance was deficient and (2) that he suffered prejudice from that deficient performance. 466 U.S. at 687. When making a determination about the deficiency prong, courts must give counsel's strategic decisions substantial deference. See id. at 689. There is "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.  To overcome that presumption and succeed on a Strickland claim, an inmate must show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

When a state court resolves the deficiency issue on the merits, as the state court did in this case in holding that Saunders' trial counsel was not deficient, Saunders, 10 So. 3d at 92–94, AEDPA adds another layer of deference. Harrington v. Richter, 562 U.S. 86, 105 (2011).  We cannot disturb that state court decision unless it was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'" so.  Harrington, 562 U.S. at 105 (citations omitted).  If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," the inmate loses.  Id.

Even if an inmate can make that extremely difficult showing, he still faces another requirement: proving he suffered prejudice.  Strickland, 466 U.S. at 687. To prove prejudice, an inmate must "show that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding

would have been different." Johnson v. Sec'y, DOC, 643 F.3d 907, 928 (11th Cir. 2011). That means a court's "confidence in the outcome must be undermined by counsel's deficient performance." Id. at 929. If a court's confidence in the outcome is not undermined by the claimed deficient performance of counsel, the claim must be denied. See Strickland, 466 U.S. at 691–96.

Because the state court in this case also determined that Saunders was not prejudiced by his counsel's performance, Saunders, 10 So. 3d at 94, AEDPA applies to the prejudice analysis as well. And that means we will not disturb the state court's decision on prejudice unless that decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

## IV.

Trial counsel's strategy at the guilt stage of the trial was to assert that, although Saunders committed the criminal acts, he was incapable of forming the specific intent for capital murder because he was under the influence of crack cocaine. According to Saunders, his trial counsel's execution of that strategy was deficient because the questions counsel asked him while he was testifying focused too much on the negative details about the crimes and not enough on Saunders' drug use and resulting failure to form the requisite mental state. He argues that counsel's performance prejudiced him because if his culpability for the crime had

8

been elicited in a less damning way and the most negative questions had not been asked, the jury would have been presented with compelling evidence that an element of the crime — the mens rea element — was missing.  We, like the state court and the district court, are not persuaded that Saunders has established either deficiency or prejudice.

First, it was not deficient for counsel to ask Saunders questions about his criminal acts that elicited negative information.  One reasonable explanation for those questions is that his trial counsel was trying "to draw the sting out of the prosecution's argument and gain credibility with the jury by conceding the weaknesses of his own case."  Smith v. Spisak, 558 U.S. 139, 161 (2010) (Stevens J., concurring in part and concurring in the judgment).  "[S]uch a strategy is generally a reasonable one," especially in a case like this one in which Saunders had given a voluntary and convincing confession to his crimes, the evidence was overwhelming, and counsel needed to gain credibility with the jury for the mens rea defense to have any chance of success.  Id.[5]

Second, Saunders' counsel executed the "draw the sting out" strategy in a reasonable manner.  Saunders does not allege that his trial counsel elicited

---

[5] Another valid reason for Saunders' trial counsel to ask the questions he asked is that he needed to bring the facts out in the guilt stage to maintain credibility with the jury at the sentence stage.  See Nixon, 543 U.S. at 191–92 (concluding that guilt stage concessions are often a good strategy, especially to avoid inconsistencies between guilt and sentence stage arguments in capital cases).

9

incorrect facts or false statements.  Nor does he assert that the facts counsel brought out on direct would not have come out on cross-examination anyway.  And in view of his confession, they surely would have.

Third, counsel was not deficient in limiting the number of questions he asked about Saunders' mental state or in phrasing those questions the way that he did.  His questions elicited from Saunders the following: (1) the details of his crack cocaine habit; (2) that he had used crack cocaine the day of the murder, including just before he killed Melvin Clemons and attempted to kill Agnes Clemons; (3) that he did not know why he committed many of his criminal acts that day other than because he was on crack cocaine; and (4) that he did not recall major details of his crimes because he was on crack cocaine.  His counsel's questions allowed Saunders to explain to the jury that "when you're on crack, you're not thinking right" and that he "really d[id]n't know" why he had choked Agnes Clemons.

There was good reason for counsel's strategy.  Had he asked more pointed questions about Saunders' mental state at the time of the crime, as Saunders argues he should have, one wrong answer could have destroyed the defense's case (for example, if Saunders said that he knew what he was doing was wrong when he did it).  Conspicuously, Saunders has never said how he would have answered more

10

pointed questions.  See Harrington, 562 U.S. at 108 (concluding it is a reasonable strategy to avoid introducing evidence that may harm the defense).[6]

Under Strickland and AEDPA's double deference standard, those reasons are enough to reject Saunders' claim as the state court and the district court did. We cannot say that "no competent counsel" would have executed the strategy the way Saunders' trial counsel did.  Chandler, 218 F.3d at 1315.  As a result, we cannot say that the state court's denial of Saunders' claim was contrary to clearly established federal law or based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  So Saunders' deficiency contention fails.

Not only that, but even if we were to conclude that the state court's decision on deficiency was contrary to clearly established federal law or based on an unreasonable determination of the facts, we couldn't say the same about its decision on prejudice.  As the Supreme Court has made clear, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  That means to prevail, Saunders must show that every fairminded jurist would agree that the state court erred in concluding that there is no "reasonable

---

[6] Saunders also argues that his trial counsel should have asked more questions about his history of mental illness and whether his mental illness was being treated at the time of the crimes.  But Saunders does not say what his answers would have been to such questions had they been asked at trial.

11

probability that the result of the proceeding would have been different." Johnson, 643 F.3d at 928.  Saunders cannot do that.

As we have already explained, Saunders does not dispute any of the harmful facts that came out during direct examination, and he has not explained how delaying the disclosure of those facts until cross-examination would have helped him.  Nor has Saunders proven that his answers to any of the questions that he asserts counsel should have asked would have been helpful at all, much less significantly helpful.  Considering those problems and the overwhelming evidence proving his guilt (including his own confession and Agnes Clemons' testimony), we cannot say that every fairminded jurist would disagree with the state court's decision that Saunders did not suffer prejudice.

V.

We AFFIRM the district court's denial of Saunders' petition.[7]

---

[7] While this appeal was pending Saunders filed a Rule 60(b)(1) motion in the district court.  He then filed in this Court a motion to stay consideration of this appeal until the district court ruled on his 60(b)(1) motion.  That motion for a stay is DENIED.