PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-9014
_____

MUMIA ABU-JAMAL,
a/k/a WESLEY COOK

v.

*SECRETARY, PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; CONNER BLAINE,
SUPERINTENDENT, SCI GREENE; DISTRICT
ATTORNEY FOR PHILADELPHIA COUNTY;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA,
                                        Appellants

*Pursuant to Fed. R. App. P. 43(c)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 99-cv-05089
(Honorable William H. Yohn Jr.)
_____

Argued May 17, 2007

Decided March 27, 2008

Certiorari Granted, Judgment Vacated and Remanded
from the Supreme Court of the United States
January 19, 2010

Argued on Remand from the
Supreme Court of the United States
November 9, 2010

Before: SCIRICA, AMBRO and COWEN, *Circuit Judges*.

(Filed: April 26, 2011)

HUGH J. BURNS, JR., ESQUIRE (ARGUED)
RONALD EISENBERG, ESQUIRE
Office of District Attorney
Three South Penn Square
Philadelphia, Pennsylvania 19107-3499
        Attorneys for Appellants

JUDITH L. RITTER, ESQUIRE (ARGUED)
Widener University School of Law
P.O. Box 7474
4601 Concord Pike
Wilmington, Delaware 19803
        Attorney for Appellee

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Mumia Abu-Jamal was convicted of first-degree murder in state court and sentenced to death. After exhausting state appeals, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. A divided panel of this court affirmed the denial of Abu-Jamal's petition insofar as it challenged his conviction. *See Abu-Jamal v. Horn*, 520 F.3d 272 (3d Cir. 2008). Our court denied his petition for rehearing en banc, and the Supreme Court of the United States denied his petition for a writ of certiorari seeking review of his conviction, *Abu-Jamal v. Beard*, --- U.S. ----, 129 S. Ct. 1910 (2009) (mem.). Abu-Jamal's conviction for first-degree murder stands.

On his death penalty challenge,[1] the District Court found the Pennsylvania Supreme Court's order denying post-conviction relief involved an unreasonable application of United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). We affirmed the District Court's grant of habeas relief on the sentence, *see Abu-Jamal*, 520 F.3d at 304, and our court denied the petition for rehearing en banc. The Commonwealth of Pennsylvania then petitioned the United States Supreme Court for a writ of certiorari, challenging our affirmance of the District Court's grant of habeas relief on the sentence.

---

[1] Abu-Jamal claimed the jury was unconstitutionally limited in its consideration of mitigating factors to only mitigating factors found unanimously by the jury. *See Mills v. Maryland*, 486 U.S. 367 (1988).

3

On January 19, 2010, the United States Supreme Court granted the Commonwealth's petition for a writ of certiorari, vacated our judgment as to Abu-Jamal's sentence, and remanded for further consideration. *Beard v. Abu-Jamal*, --- U.S. ----, 130 S. Ct. 1134 (2010) (mem.). The Supreme Court directed that we reconsider our holding in light of intervening authority, *Smith v. Spisak*, 558 U.S. ----, 130 S. Ct. 676 (2010).

After further review, we conclude the Pennsylvania Supreme Court unreasonably applied *Mills v. Maryland*, 486 U.S. 367 (1988), requiring Abu-Jamal's death sentence to be vacated. Our decision is required by *Mills* and consistent with *Spisak*. Accordingly, we will affirm the District Court's grant of habeas relief on Abu-Jamal's mitigation instruction claim.

I.

In 1982, a Pennsylvania jury convicted Abu-Jamal of the murder of Philadelphia Police Officer Daniel Faulkner. *See Abu-Jamal*, 520 F.3d at 274-76 (providing a full factual history). The jury returned, and the judge imposed, a sentence of death.

The Pennsylvania courts denied Abu-Jamal's claims on direct appeal and collateral review. *Commonwealth v. Abu-Jamal*, 555 A.2d 846 (Pa. 1989); *Commonwealth v. Abu-Jamal*, 569 A.2d 915 (Pa. 1990) (per curiam); *Commonwealth v. Abu-Jamal*, No. 1357, 1995 WL 1315980, at *128 (C.P. Ct. Phila. Cty. Sept. 15, 1995); *Commonwealth v. Abu-Jamal*,

4

720 A.2d 79 (Pa. 1998); *Commonwealth v. Abu-Jamal*, 833 A.2d 719 (Pa. 2003). The United States Supreme Court denied Abu-Jamal's petition for a writ of certiorari on October 1, 1990, *Abu-Jamal v. Pennsylvania*, 498 U.S. 881 (1990) (mem.) (on direct review), his petition for rehearing on November 26, 1990, *Abu-Jamal v. Pennsylvania*, 498 U.S. 993 (1990) (mem.), a second request for rehearing on June 10, 1991, *Abu-Jamal v. Pennsylvania*, 501 U.S. 1214 (1991) (mem.), and a second and third petition for a writ of certiorari on October 4, 1999, *Abu-Jamal v. Pennsylvania*, 528 U.S. 810 (1999) (mem.) (on collateral review), and May 17, 2004, *Abu-Jamal v. Pennsylvania*, 541 U.S. 1048 (2004) (mem.) (same), respectively.

Having exhausted state court remedies, Abu-Jamal filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. He challenged the validity of his criminal conviction, his capital sentence, and the sufficiency of post-conviction review. He argued, among other things, that the sentencing phase of his trial violated the United States Constitution because the jury instructions and verdict sheet required jury unanimity in its findings with respect to the existence of mitigating circumstances. The District Court denied the petition as to the conviction and post-conviction proceedings but accepted Abu-Jamal's mitigation instruction claim. *See Abu-Jamal v. Horn*, No. Civ. A. 99-5089, 2001 WL 1609690, at *1 (E.D. Pa. Dec. 18, 2001). The court concluded the Pennsylvania Supreme Court unreasonably applied United States Supreme Court precedent in finding otherwise and affirming the Court of Common Pleas of

5

Philadelphia County's denial of post-conviction relief. *See id.* at \*126. Consequently, the District Court granted a writ of habeas corpus on this claim and ordered the Commonwealth to conduct a new sentencing hearing or sentence Abu-Jamal to life imprisonment. *Id*. at \*130. The Commonwealth appealed the order of the District Court granting the writ as to the sentencing and Abu-Jamal cross-appealed the denial of the writ with respect to the conviction. As noted, we affirmed the judgment of the District Court in its entirety. *Abu-Jamal*, 520 F.3d at 274.[2] Abu-Jamal subsequently filed a petition for panel rehearing and rehearing en banc, which was denied.

Thereafter, the parties filed cross-petitions for writs of certiorari in the Supreme Court of the United States. The Supreme Court denied Abu-Jamal's petition seeking review of his conviction, *see Abu-Jamal v. Beard*, --- U.S. ----, 129 S. Ct. 1910 (2009) (mem.), but granted the Commonwealth's petition, vacated the portion of our judgment regarding Abu-Jamal's sentence, and remanded for further consideration in light of new authority, *see Beard v. Abu-Jamal*, --- U.S. ----, 130 S. Ct. 1134 (2010) (mem.).

Our review on remand is limited to whether the Pennsylvania Supreme Court unreasonably applied United States Supreme Court precedent in finding no constitutional defect in the jury instructions and verdict form employed in

---

[2] As noted, a divided panel affirmed the denial of habeas relief on the conviction; the entire panel affirmed the grant of habeas relief on the sentence. *See Abu-Jamal*, 520 F.3d at 305 (Ambro, J., concurring in part, dissenting in part).

6

the sentencing phase of Abu-Jamal's trial. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Pursuant to the Supreme Court's order, we consider this question in light of *Spisak* and will examine whether the verdict form and jury instructions in the present case are distinguishable from those at issue in *Spisak* such that, taken together, they clearly brought about a "substantial probability" the jury believed it was precluded from considering any mitigating circumstance not found unanimously. *Mills*, 486 U.S. at 384.

II.

Under the standard for habeas relief established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner's application for a writ of habeas corpus will be denied unless the adjudication of a claim in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Under the first clause of § 2254(d)(1), "a state-court decision is contrary to [Supreme Court] precedent if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to

7

[the Court's]." *Williams*, 529 U.S. at 405. Here, the Pennsylvania Supreme Court correctly identified *Mills* as the applicable Supreme Court precedent, and the facts at issue are not "materially indistinguishable" from those in *Mills*. The Pennsylvania Supreme Court's decision was consequently not "contrary to" *Mills*. *See Williams*, 529 U.S. at 405.

Accordingly, we consider only the second clause of § 2254(d)(1), and must determine whether the Pennsylvania Supreme Court's decision to deny Abu-Jamal's mitigation instruction claim "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in *Mills*. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). The Supreme Court has instructed that, in making this inquiry, we "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

In *Spisak*, the Supreme Court found no violation of *Mills* and consequently concluded the state court decision at

8

issue, reaching the same conclusion, was not "'contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' in *Mills*." 130 S. Ct. at 684 (quoting 28 U.S.C. § 2254(d)(1)) (alteration in original). Accordingly, consistent with the Supreme Court's order to reconsider in light of *Spisak*, we first evaluate whether a *Mills* violation has occurred, and then proceed to examine whether the Pennsylvania Supreme Court's application of *Mills* was objectively unreasonable under the second clause of § 2254(d)(1).

III.

In *Mills*, the Supreme Court vacated a death sentence after finding there was "a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance."[3] 486 U.S. at 384. The Court held the Constitution proscribes imposition of the death penalty if members of the jury could reasonably believe they are precluded from considering

---

[3] *Spisak* used the word "possibility" instead of "probability" when quoting directly from *Mills*. *See* 130 S. Ct. at 684 (quoting *Mills*, 486 U.S. at 384). We take this to have been inadvertent, and in any event *Mills* used both formulations. *See* 486 U.S. at 377, 384. We do not understand *Spisak* to

mitigating evidence unless the jury unanimously agrees the mitigating circumstance has been proven to exist. *Id*. at 380, 384; *see also McKoy v. North Carolina*, 494 U.S. 433, 442-43 (1990) ("*Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death.").[4]

The verdict form at issue in *Mills* included a list of potentially mitigating circumstances, and spaces for the jury to check "yes" or "no" after each circumstance. Preceding the list, the form read "'[b]ased upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist

---

have changed the legal standard for evaluating this kind of question.

[4] In *Boyde v. California*, 494 U.S. 370 (1990), the Supreme Court held "[t]he legal standard for reviewing jury instructions claimed to restrict impermissibly a jury's consideration of relevant evidence," *id*. at 378, is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence," *id.* at 380. Because *Spisak* relied exclusively on *Mills*' "substantial probability" standard, and because we think a "substantial probability" is neither more nor less than a "reasonable likelihood," *see Hackett v. Price*, 381 F.3d 281, 300 & n.13 (3d Cir. 2004), we will consider whether there is a "substantial probability" the jury believed it was precluded from finding a mitigating circumstance that had not been unanimously agreed upon.

. . . and each mitigating circumstance marked 'no' has not been proven . . . .'" *Mills*, 486 U.S. at 387 (Appendix to the Opinion of the Court). Next, the form read "'[b]ased on the evidence we unanimously find that it has been proven . . . that the mitigating circumstances marked 'yes' . . . outweigh the aggravating circumstances,'" and provided spaces where the jury could mark either "yes" or "no." *Id*. at 388-89. Thus, the "instructions, together with the forms, told the jury to mark 'yes' on [the] list of mitigating factors only if the jury unanimously concluded that the particular mitigating factor had been proved, and to consider in its weighing analysis . . . only those mitigating factors marked 'yes.'" *Spisak*, 130 S. Ct. at 683. Accordingly, the Court found the jury was "not free . . . to consider *all* relevant evidence in mitigation as they balanced aggravating and mitigating circumstances," but only mitigating evidence found unanimously to exist.[5] *Mills*, 486 U.S. at 380. The *Mills* Court conceded that a constitutional "construction of the jury instructions and verdict form is plausible," *id*. at 377, but remanded for resentencing because there was "at least a substantial risk that the jury was misinformed," *id*. at 381, and had reasonably interpreted the jury instructions and verdict form to preclude consideration of mitigating circumstances not found unanimously, *see id*. at 384 ("Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently

---

[5] The jury in *Mills* did not mark "yes" next to any mitigating circumstance, 486 U.S. at 387-88, and did not actually reach the balancing stage, *id*. at 380 n.13.

11

require the jury to impose the death penalty, is one we dare not risk.").

We conclude the verdict form and jury instructions in this case likewise created a substantial probability the jury believed it was precluded from finding a mitigating circumstance that had not been unanimously agreed upon. In relevant part, the first page of the verdict form used in Abu-Jamal's trial stated:

(1) We, the jury, unanimously sentence the defendant to
[X] death
[ ] life imprisonment.

(2) (To be used only if the aforesaid sentence is death)
We, the jury, have found unanimously
[ ] at least one aggravating circumstance and no mitigating circumstance. The aggravating circumstance(s) is/are

_____.

[X] one or more aggravating circumstances which outweigh any mitigating circumstances. The aggravating circumstance(s) is/are

_____A_____.

The mitigating circumstance(s) is/are
_____A_____.

The second page listed ten potentially aggravating circumstances (a-j). A third page listed eight potentially mitigating circumstances (a-h).[6] Each of the potential aggravating or mitigating circumstance listed had a space next to it for the jury to place a checkmark if it found the aggravating or mitigating circumstance to exist. On the third and final page, there were twelve spaces for each juror to sign his or her name, and each did. The instructions given to the jury provided, in part:

> Members of the jury, you must now decide whether the defendant is to be sentenced to death or life imprisonment. The sentence will depend upon your findings concerning aggravating and mitigating circumstances. The Crimes Code provides that a verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.

---

[6] The jury placed a checkmark next to mitigating circumstance (a) on the third page and then indicated this selection on the first page by writing "A." Circumstance (a) reads: "The defendant has no significant history of prior criminal convictions[.]" Circumstance (h) allowed the jury to consider and select "[a]ny other mitigating matter concerning the character or record of the defendant or the circumstances of his offense."

The verdict must be a sentence of life imprisonment in all other cases.

. . . . .

The [C]ommonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances, but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. A preponderance of the evidence exists where one side is more believable than the other side. . . .

Now, the verdict is for you, members of the jury. Remember and consider all of the evidence giving it the weight to which it is entitled. Remember that you are not merely recommending a punishment. The verdict you return will actually fix the punishment at death or life imprisonment. Remember again that your verdict must be unanimous. It cannot be reached by a majority vote or by any percentage. It must be the verdict of each and everyone [sic] of you.

Remember that your verdict must be a sentence of death if you unanimously find at least one

14

aggravating circumstance and no mitigating circumstances. Or, if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

It is substantially probable the verdict form's first page, especially "[w]e, the jury, have found unanimously . . . one or more aggravating circumstances which outweigh any mitigating circumstances," was read by the jury to mean that both aggravating and mitigating circumstances must be found unanimously. The jury instructions read similarly, stating: "The Crimes Code provides that a verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." And the portion of the form where the jury was instructed to identify any mitigating circumstances found—"The mitigating circumstance(s) is/are ___."—was introduced by the words "[w]e, the jury, have found unanimously." Moreover, the instructions throughout and repeatedly emphasized unanimity. In light of the language and parallel structure of the form and instructions in relation to aggravating and mitigating circumstances, it is notable that neither the verdict form nor the judge's charge said or in any way suggested that the jury should apply the unanimity requirement to its findings of aggravating but not mitigating circumstances. This absence is also notable because the trial court

15

distinguished between the two with respect to the proper burden of proof the jury should apply.

We conclude the verdict form together with the jury instructions read that unanimity was required in the consideration of mitigating circumstances and that there is a substantial probability the jurors believed they were precluded from independent consideration of mitigating circumstances in violation of *Mills*. We now compare the instructions at issue in *Spisak* with the verdict form and jury charge here to determine whether our conclusion is consistent with *Spisak*.

IV.

In *Spisak* the Supreme Court evaluated a Sixth Circuit decision holding a habeas petitioner's sentencing instructions unconstitutional. The Supreme Court found the forms and instructions used in the sentencing phase of Spisak's trial "differ[ed] significantly," *Spisak*, 130 S. Ct. at 683, from those at issue in *Mills* such that *Mills* was not violated and "consequently . . . the state court[] decision upholding the[] forms and instructions was not 'contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' in *Mills*," *id*. at 684 (alteration in original) (quoting 28 U.S.C. § 2254(d)(1)). In Spisak's trial, the jury found aggravating circumstances prior to, and separately from, the sentencing phase of the trial when the jury was directed to consider mitigating circumstances. At Spisak's sentencing hearing, the trial judge instructed the jury that the "aggravating factors

16

they would consider were the specifications that the jury had found proved beyond a reasonable doubt at the guilt phase of the trial—essentially, that each murder was committed in a course of conduct including . . . other crimes, and, for two of the murders, that the murder was committed with the intent to evade apprehension or punishment for another offense." *Id.* at 683. The judge then explained what a mitigating factor was, listed examples, and informed the jury they should consider "any other" mitigating circumstances "relevant to the issue of whether the defendant should be sentenced to death." *Id.* (internal quotation marks omitted). The judge then instructed the jury on how it should reach its verdict:

> [Y]ou, the trial jury, must consider all of the relevant evidence raised at trial, the evidence and testimony received in this hearing and the arguments of counsel. From this you must determine whether, beyond a reasonable doubt, the aggravating circumstances, which [Spisak] has been found guilty of committing in the separate counts are sufficient to outweigh the mitigating factors present in this case.
>
> If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstance in each separate count outweighs the mitigating factors, then you must return that finding to the Court.
>
> . . . . .

17

On the other hand, if after considering all of the relevant evidence raised at trial, the evidence and the testimony received at this hearing and the arguments of counsel, you find that the State failed to prove beyond a reasonable doubt that the aggravating circumstances which [Spisak] has been found guilty of committing in the separate counts outweigh the mitigating factors, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court.

*Id*. at 683-84 (alteration in original) (internal quotation marks omitted). Two sets of verdict forms were made available to the jury. One read:

We the jury in this case . . . do find beyond a reasonable doubt that the aggravating circumstance which the defendant . . . was found guilty of committing was sufficient to outweigh the mitigating factors present in this case.

We the jury recommend that the sentence of death be imposed . . . .

Spisak Trial Transcript of July 19, 1983, at 2975-76, Court of Common Pleas, Cuyahoga County, Ohio. The other read:

We the jury . . . do find that the aggravating circumstances which the defendant . . . was found guilty of committing are not sufficient to

18

> outweigh the mitigating factors present in this case.
>
> We the jury recommend that the defendant . . . be sentenced to life imprisonment . . . .

*Id*. at 2976.

After reviewing the jury instructions and the language of the verdict forms, the Supreme Court found that:

> The instructions and forms made clear that, to recommend a death sentence, the jury had to find, unanimously and beyond a reasonable doubt, that each of the aggravating factors outweighed any mitigating circumstances. But the instructions did not say that the jury must determine the existence of each individual mitigating factor unanimously. Neither the instructions nor the forms said anything about how—or even whether—the jury should make individual determinations that each particular mitigating circumstance existed. They focused only on the overall balancing question. And the instructions repeatedly told the jury to "conside[r] all of the relevant evidence."

*Spisak*, 130 S. Ct. at 684 (alteration in original) (citation omitted). Based on these findings, the Court concluded:

> In our view the instructions and verdict forms did not clearly bring about, either through what

they said or what they implied, the circumstance that *Mills* found critical, namely, "a substantial possibility [sic] that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance."

*Id*. at 684 (quoting *Mills*, 486 U.S. at 384).

The Commonwealth claims the instructions examined in *Spisak* are "virtually identical" to the language at issue here, which must therefore also be read to address only the final balancing question. The Commonwealth sees equivalence in "'[i]f all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstance in each separate count outweighs the mitigating factors,'" *Spisak*, 130 S. Ct. at 683, and "[w]e, the jury, have found unanimously . . . one or more aggravating circumstances which outweigh any mitigating circumstances," from Abu-Jamal's verdict form. Thus, the Commonwealth contends the verdict form's first page does not read that both aggravating and mitigating circumstances must be found unanimously in violation of *Mills*.

We disagree. The identified language of unanimity at issue in *Spisak* addressed only how the jury should weigh aggravating and mitigating circumstances, not how to find either individual aggravating or mitigating circumstances.

20

*Spisak*, 130 S. Ct. at 684.  The forms and instructions in *Spisak* contained no language whatsoever "about how—or even whether—the jury should make individual determinations that each particular mitigating circumstance existed." *Id*. at 684.

The verdict form and judge's instructions used in the sentencing phase of Abu-Jamal's trial are materially different and easily distinguished from those at issue in *Spisak*.  By contrast with *Spisak*, the identified language of unanimity here indisputably addresses more than the final balancing of aggravating and mitigating factors. "We, the jury, have found unanimously," directly refers to "one or more aggravating circumstances," and in the absence of any instruction or even suggestion to the contrary, it is substantially probable the jury applied the unanimity requirement to "mitigating circumstances" as well.  When "read naturally," *Spisak*, 130 S. Ct. at 682, in the context of the form and instructions, there is a substantial probability the word "unanimously" was understood by the jury to modify and refer to the finding of both aggravating and mitigating circumstances.[7]

Moreover, by further contrast with *Spisak*, the form and instructions required the jury to make individual determinations that certain identified mitigating

---

[7] The same language appears again in the jury instructions: "The Crimes Code provides that a verdict must be a sentence of death . . . if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances."

21

circumstances existed and "said or . . . implied," *id.*, at 684, that these determinations must be made unanimously. The verdict form at issue in this case required the jury to select any mitigating circumstances found from a list of potentially mitigating circumstances; as discussed, the list is accompanied by spaces for a checkmark after each potential circumstance. The trial judge instructed the jury to identify each mitigating circumstance it found and considered in its weighing of aggravating and mitigating circumstances:

> [The] mitigating circumstances appear on the third page here. They run from a little (a) to a little letter (h). And whichever ones you find there, you will put an "X" mark or check mark and then, put it on the front here at the bottom [of the first page], which says mitigating circumstances.

In *Spisak* the jury had already determined the existence of aggravating circumstances at the guilt phase, separately from and before the sentencing phase of the trial. Here, the form and instructions required the jury to make individual determinations regarding both mitigating and aggravating circumstances contemporaneously during the penalty phase. The verdict form introduced the list of potential mitigating circumstances with the list of aggravating circumstances under one heading reading "AGGRAVATING AND MITIGATING CIRCUMSTANCES." The jury was instructed identically as to each list.[8] The parallel structure of

---

[8] The jury instructions for aggravating circumstances stated:

the form in relation to aggravating and mitigating circumstances reads that findings as to each should be made similarly. *See Mills*, 486 U.S. at 378 ("[W]e presume that, unless instructed to the contrary, the jury would read similar language throughout the form consistently."). Additionally,

> And what you do, you go to Page 2. Page 2 lists all the aggravating circumstances. They go from small letter (a) to small letter (j). Whichever one of these that you find, you put an "X" or check mark there and then, put it on the front. Don't spell it out, the whole thing, just what letter you might have found.

The trial judge reiterated this instruction for the "second block" under section (2) and then instructed the jury as to mitigating circumstances:

> And then, you would as I said before, on the second page indicate which [aggravating circumstances] they were and put it on the front here, like a small number or (a) or (b) or (c) or whatever one you might find. And then, underneath that, there are: "The mitigating circumstances(s) [sic] is/are __." And those mitigating circumstances appear on the third page here. They run from a little (a) to a little letter (h). And whichever ones you find there, you will put an "X" mark or check mark and then, put it on the front here at the bottom, which says mitigating circumstances.

the trial judge distinguished between mitigating and aggravating circumstances with respect to the proper standard of proof applicable to each.[9] This reinforced the apparent similitude with respect to the finding of mitigating and aggravating circumstances, increasing the "risk that the jury was misinformed," *id.* at 381, and impermissibly limited in its consideration of mitigating evidence. Accordingly, unlike the jury in *Spisak*, the jury here was required to specify not only the aggravating circumstances it found but also mitigating circumstances, to do so simultaneously, to choose aggravating and mitigating circumstances from visually identical lists, and to represent its findings as to each in an identical manner. In light of what the form and instructions both said and implied, and the repeated emphasis on unanimous findings, it is notable that neither the verdict form nor the judge's charge indicated in any manner that the jury should apply the

---

[9] The jury instructions stated:

> The [C]ommonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances, but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. A preponderance of the evidence exists where one side is more believable than the other side. All the evidence from both sides, including the evidence you heard earlier during the trial-in-chief as to aggravating or mitigating circumstances is important and proper for you to consider.

unanimity requirement to its finding of aggravating but not mitigating circumstances.

Accordingly, we conclude our judgment that there is a "substantial probability" the jury believed it could not consider any mitigating circumstance not unanimously agreed upon is consistent with *Spisak*. "There is, of course, no extrinsic evidence of what the jury in this case actually thought." *Mills*, 486 U.S. at 381. But we need only conclude a "natural interpretation," *id*., of the forms and instructions together clearly brought about "the circumstance that *Mills* found critical, namely," *Spisak*, 130 S. Ct. at 684, "a substantial probability that reasonable jurors . . . well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance," *Mills*, 486 U.S. at 384.

V.

The Pennsylvania Supreme Court's decision to reject Abu-Jamal's mitigation instruction claim involved an objectively unreasonable application of *Mills*. On post-conviction review of this matter, the Pennsylvania Supreme Court found no *Mills* violation. The Court reasoned:

> The verdict slip employed in the instant case consisted of three pages. The requirement of unanimity is found only at page one in the section wherein the jury is to indicate its sentence. The second page of the form lists all

25

the statutorily enumerated aggravating circumstances and includes next to each such circumstance a designated space for the jury to mark those circumstances found. The section where the jury is to checkmark those mitigating circumstances found, appears at page three and includes no reference to a finding of unanimity. Indeed, there are no printed instructions whatsoever on either page two or page three. The mere fact that immediately following that section of verdict slip, the jurors were required to each sign their name is of no moment since those signature lines naturally appear at the conclusion of the form and have no explicit correlation to the checklist of mitigating circumstances. As such, we cannot conclude, as Appellant urges, that the structure of the form could lead the jurors to believe that they must unanimously agree on mitigating evidence before such could be considered. Moreover, verdict slips similar to that employed in the instant matter have been held by our court not to violate the dictates of *Mills*.

*Commonwealth v. Abu-Jamal*, 720 A.2d 79, 119 (Pa. 1998).

The Pennsylvania Supreme Court focused exclusively on the verdict form and reached its conclusion without considering the entire jury charge. Significantly, the court did not evaluate or address the trial judge's oral instructions. *See id*. As a consequence, the court did not consider whether the

26

language "a verdict must be a sentence of death . . . if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances," would create a substantial probability the jury had understood the instructions to preclude consideration of mitigating circumstances that were not agreed to by all twelve members of the jury. Nor did the court consider the effect on the jury of being instructed identically and contemporaneously with respect to the making of individual determinations regarding mitigating and aggravating circumstances. Moreover, although the court rejected the claim that the "structure of the form could lead the jurors to believe that they must unanimously agree on mitigating evidence before such could be considered," *id*., it conducted an incomplete analysis of only a portion of the verdict form, rather than the entire form. The court did not consider whether the language "[w]e, the jury, have found unanimously . . . one or more aggravating circumstances which outweigh any mitigating circumstances," would create a substantial probability the jury had applied the form in violation of *Mills*, nor did the court address the likely effect on the jury of having to choose aggravating and mitigating circumstances from visually identical lists and represent its findings as to each in an identical manner. Accordingly, the Pennsylvania Supreme Court failed to evaluate whether the complete text of the verdict form, together with the jury instructions, would create a substantial probability the jury believed both aggravating and mitigating circumstances must be found unanimously. *See id*. For these reasons, the Pennsylvania Supreme Court's application of *Mills* was objectively unreasonable.

VI.

Like the *Mills* Court, "[a]lthough we are hesitant to infer too much about the . . . verdict form from . . . well-meant efforts to remove ambiguity from the State's capital sentencing scheme, we cannot avoid noticing . . . significant changes effected in instructions to the jury." 486 U.S. at 382. On February 1, 1989, the Pennsylvania Supreme Court adopted a uniform sentencing verdict form for capital cases. *See* Pa. R. Crim P. 358A (effective July 1, 1989). The new form, promulgated shortly after *Mills* was decided on June 6, 1988, "reflects the requirement that jurors not be prevented from considering all evidence in mitigation," *Mills*, 486 U.S. at 382, and makes explicit that unanimity is not required in determining the existence of mitigating circumstances. The relevant portion of the revised form reads:

II. SENTENCING VERDICT AND FINDINGS

If you have reached a *unanimous verdict*, complete this part of the form.

In Section A, indicate whether the sentencing verdict is death or life imprisonment. If the sentence is death, indicate the basis for that verdict by completing Section B. If the sentence is life imprisonment, indicate the basis for that verdict by completing Section C.
A. We, the jury, *unanimously sentence* the defendant to (check one):
_____ Death

_____ Life Imprisonment

B. The findings on which the sentence of death is based are (check one):

_____1. At least one aggravating circumstance and no mitigating circumstance.

The aggravating circumstance(s) *unanimously found* (is) (are):

_____.

_____2. One or more aggravating circumstances which outweigh(s) any mitigating circumstance(s).

The aggravating circumstance(s) *unanimously found* (is) (are):

_____.

The mitigating circumstance(s) *found by one or more of us* (is) (are):

_____.

C. The findings on which the sentence of life imprisonment is based are (check one):

_____1. No aggravating circumstance exists.

_____2. The mitigating circumstance(s) (is) (are) not outweighed by the aggravating circumstance(s).

The mitigating circumstance(s) *found by one or more of us* (is) (are):

_____.

The aggravating circumstance(s) *unanimously found* (is) (are):

_____.

Pa. R. Crim P. 358A (emphasis added).  The form used in Abu-Jamal's trial simply read "[w]e, the jury, have found unanimously . . . one or more aggravating circumstances which outweigh any mitigating circumstances.  The aggravating circumstance(s) is/are __.  The mitigating circumstance(s) is/are __."  By contrast, the revised uniform verdict slip states "[t]he mitigating circumstance(s) found by one or more of us (is) (are)," thereby making clear that, although aggravating circumstances must be found unanimously, mitigating evidence need not be found unanimously in order to be considered by individual jurors during the weighing and balancing process.  The Pennsylvania Suggested Standard Criminal Jury Instructions were also amended to remove ambiguity with respect to the consideration of mitigating evidence during the weighing and balancing process.  *See* Pennsylvania Suggested Standard Criminal Jury Instructions §15.2502H(3) (2006).  The new instruction reads, in relevant part:

> When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular *mitigating* circumstance as present despite what other jurors may believe.  This is different from the general findings to reach your ultimate sentence of either life in prison or death.  The specific findings as to any particular aggravating circumstance must be unanimous. All of you must agree that the Commonwealth has proven it beyond a reasonable doubt.  That

30

is not true for any mitigating circumstance. Any circumstance that any juror considers to be mitigating may be considered by that juror in determining the proper sentence. This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives a defendant the full benefit of any mitigating circumstances. It is closely related to the burden of proof requirements. Remember, the Commonwealth must prove any aggravating circumstance beyond a reasonable doubt while the defendant only has to prove any mitigating circumstance by a preponderance of the evidence. Your final sentence—life imprisonment or death—must be unanimous. All of you must agree that the sentence should be life imprisonment or that the sentence should be death because there is at least one aggravating circumstance and no mitigating circumstance or because the aggravating circumstance or circumstances outweigh the mitigating circumstance or circumstances found by any juror.

*Id*. These clarifications highlight the ambiguity at issue in this case and on their own serve at least to suggest the substantial probability that "some jurors were prevented from considering 'factors which may call for a less severe penalty.'" *Mills*, 486 U.S. at 376 (quoting *Lockett v. Ohio*, 438 U.S. 586, 605 (1978)). Accordingly, "[w]e can and do

infer from these changes at least *some* concern . . . that juries could misunderstand the previous instructions as to unanimity and the consideration of mitigating evidence by individual jurors." *Id*. at 382.

## VII.

For the foregoing reasons, we will affirm the District Court's grant of relief on the mitigation instruction claim. As the District Court noted, the "Commonwealth of Pennsylvania may conduct a new sentencing hearing in a manner consistent with this opinion within 180 days of the Order accompanying this [opinion], during which period the execution of the writ of habeas corpus will be stayed, or shall sentence [Abu-Jamal] to life imprisonment." *Abu-Jamal*, 2001 WL 1609690, at *130.