*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 17, 2020

Plaintiff-Appellee,

v

No. 348947
Kent Circuit Court
LC No. 18-005090-FC

VICENTE RODRIGUEZ ORTIZ II,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of first-degree murder, MCL 750.316; assault with a dangerous weapon (felonious assault), MCL 750.82; domestic violence, MCL 750.812; and possession of a firearm while committing a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment for his conviction of first-degree murder, two to four years' imprisonment for his conviction of felonious assault, two years' imprisonment for his conviction of felony-firearm, and 93 days' jail time for his conviction of domestic assault. We affirm.

Christina Sistos, defendant's ex-girlfriend and the victim's best friend, testified that defendant was her boyfriend and that they dated for "three or four years." Her relationship leading up to January 23 was "rocky" and "was on and off a lot." Sistos testified that she and defendant ended the relationship at "5:00, 6:00" p.m. on the evening of the victim's death. According to Sistos, defendant was very jealous of men with whom she was friends.[1]

Testimony established that Sistos was outside her house in the victim's car with the victim and two other friends when defendant walked past the car and looked inside.[2] Shortly thereafter, defendant came back to the car, opened the front passenger door where Sistos was seated, and pulled Sistos out of the car. The two walked away from the car and an argument ensued. One of

---

[1] Several witnesses testified that there was no romantic relationship between the victim and Sistos.

[2] Defendant's home was a five-minute walk away from Sistos's house.

Sistos's friends exited the car to aid Sistos and pulled her away from defendant. Sistos and her friend went back to the victim's car while defendant left the scene to return home. The four friends went inside Sistos's house to tell her mother what happened. Meanwhile, defendant was retrieving his gun from his home. Approximately 20 to 30 minutes elapsed since Sistos, the victim, and the two friends entered Sistos's house.

The victim then stated that he had to leave, which prompted Sistos and the other friend to exit toward the victim's car to gather their things. The victim stayed inside to grab some food while the two gathered their items. Sistos testified that, when she got to the victim's car, defendant ran up behind her and pointed the gun at her head. Defendant then ran off, which allowed Sistos and the other friend to enter the victim's car. A couple minutes later, the victim came outside and entered his car. According to testimony, Sistos was telling the victim to hurry, and the victim began to fumble his keys. While the victim fumbled his keys, defendant approached the driver's-side window and proceeded to shoot three shots: one into the victim's chest, one into the victim's neck, and one into the victim's head. Defendant was arrested the next day, and in a recorded interview with police, he admitted to shooting the victim. The jury convicted defendant, and the trial court sentenced defendant as noted above. This appeal followed.

Defendant first argues that, because his anger was directed toward Sistos and the facts would have established premeditation toward her, the trial court erred by denying his motion for a directed verdict on the first-degree murder charge because there was no premeditation established as to the victim. We disagree.

> When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. [*People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).]

The elements of first-degree murder are as follows:

> (1) the intentional killing of a human (2) with premeditation and deliberation. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation. [*People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citations omitted).]

In this case, the prosecution presented sufficient evidence to persuade a rational trier of fact that the essential elements of first-degree murder were proven beyond a reasonable doubt. See *Aldrich*, 246 Mich App at 122. Viewed in the light most favorable to the prosecution, the evidence showed that defendant had emotional instability and was jealous of males that Sistos would talk with, that defendant was highly upset that Sistos was with the victim a few hours after she and defendant broke up, that defendant pulled Sistos out of the car to yell at her for being with the victim, and that defendant went back to his house to retrieve his gun. Testimony further established

that defendant ran up behind Sistos and pointed the gun at her, did not shoot, and then proceeded to run to the back of the car. Testimony also showed that defendant allowed Sistos and the other friend to enter the car and that defendant waited for the victim to come outside to enter the car. It was not until the victim entered the driver's seat that defendant came up to the driver's-side window to initiate shooting. All this evidence taken together could establish that defendant intentionally waited for the victim to enter the car, that defendant thought about what he would do once the victim entered the car, and that defendant deliberated his choice to wait for the victim. "In determining the facts the jury may draw reasonable inferences from the facts established by either direct or circumstantial evidence." *People v Palmer*, 392 Mich 370, 395; 220 NW2d 393 (1974). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Because premeditation and deliberation can be inferred from the surrounding facts and circumstances so long as the record supports such inference, see *Bass*, 317 Mich App at 266, the trial court did not err by denying defendant's motion for a directed verdict.[3]

Defendant next argues that defense counsel was ineffective for failing to attempt to exclude the video interrogation of defendant—in which he admitted to shooting the victim—because defendant had just attempted suicide and was heavily intoxicated. Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews findings of facts for clear error and questions of law de novo. *Id*. Unpreserved claims of error are reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 763-764. Plain error affects substantial rights when it alters the outcome of the trial court proceedings. See *id*.

To receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010) (quotation marks and citation omitted); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Accordingly, a defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Trakhtenberg*, 493 Mich at 62. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 US at 690. Secondly, defendant must show a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at

---

[3] Defendant's argument simply rests on the fact that there was never any altercation between the victim and defendant, and that the killing of the victim essentially "came out of the blue." However, there is no requirement under a charge of first-degree murder that the victim and accused have an altercation. The elements simply require an intentional killing with premeditation and deliberation. Defendant's argument suggests that an individual could never be guilty of first-degree murder so long as no "prior act or statement" was taken or made toward the victim. Such requirement is inconsistent with the law.

694. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant neither suggests that defense counsel's representation fell below an objective standard of reasonableness or that such representation prejudiced defendant. Rather, defendant simply states that "[t]here was absolutely no reason for counsel to NOT challenge the admission of the video under MRE 403." In other words, defendant has presented no substantive argument that defense counsel was ineffective. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, we deem this issue abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Defendant also argues that the prosecution engaged in prosecutorial misconduct when it distorted the "reasonable person" standard. Although we agree that the comments were improper, we conclude that the comments do not warrant reversal. Generally, this Court reviews de novo claims of prosecutorial misconduct. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Unpreserved claims of error are reviewed for plain error affecting substantial rights. See *Carines*, 460 Mich at 763-764.

> [T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citation omitted).]

"In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative," and "[n]o error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

"To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (quotation marks and citations omitted). "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control. The determination of what is reasonable provocation is a question of fact for the fact-finder." *People v Tierney*, 266 Mich App 687, 715; 703 NW2d 204 (2005) (quotation marks and citations omitted).

Defendant challenges the following remarks by the prosecutor during his closing argument:[4]

> The standard is what a reasonable person would do when confronted with those facts. You, ladies and gentlemen of the jury, are the reasonable people. It is—it is what you would do in a similar circumstance. Stepping into the shoes of the defendant, would you be so provoked by your girlfriend breaking up with you that you would kill, rashly and impulsively? That's what she's—that's what she's trying to you [sic] make you believe that that even remotely approaches something that isn't ludicrous.

Our Supreme Court has cited the "reasonable person standard" to be a "standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor; and it must be, so far as possible, the same for all persons, since the law can have no favorites." *Radtke v Everett*, 442 Mich 368, 390; 501 NW2d 155 (1993) (quotation marks and citation omitted) (applying the standard of "reasonable person" in the context of a claim under the Michigan Civil Rights Act, MCL 37.2101 *et seq*., to incorporate gender differences). *Black's Law Dictionary* (11th ed) defines "reasonable person" as "[a] hypothetical person used as a legal standard" and is "a person who exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of other's interests." "The common law measures provocation under a reasonable person standard. According to this rule, provocation is adequate only if it is so severe or extreme as to provoke a reasonable man to commit the act." *People v Sullivan*, 231 Mich App 510, 519; 586 NW2d 578 (citation omitted). With these definitions in mind, the prosecution's remarks about the jurors themselves being the reasonable person appears to be error. Such remarks may have injected into each juror the responsibility to decide whether each juror himself or herself would have killed the victim, and if each juror would not have killed the victim under the circumstances, then the jury could not convict defendant of voluntary manslaughter. In other words, the prosecutor's remarks could have essentially removed voluntary manslaughter from the jury's deliberations altogether.

However, "[t]he propriety of a prosecutor's remarks depends on all the facts of the case." *Dobek*, 274 Mich App at 64. The facts of this case demonstrate that defendant pulled Sistos out of the victim's car, went back home to get his gun, traveled back to the victim's car approximately 20 to 30 minutes later, waited for the victim to enter the car, and then shot the victim through the driver's-side window three times. Defendant also concedes that there was no altercation of any sort between the victim and defendant. Considering this evidence, although the prosecutor's statements were incorrect, such statements did not deny defendant a fair and impartial trial. Furthermore, "[a] prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial. However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *People v Grayer*, 252 Mich App

---

[4] We note that defendant does not advance an ineffective assistance of counsel claim or a challenge to the jury instructions.

-5-

349, 357; 651 NW2d 818 (2002) (citation omitted). The trial court instructed the jury on voluntary manslaughter as follows:

> For manslaughter, the following two things must be present: First, when the defendant acted, his thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

The trial court further instructed that "[t]he lawyers' statements and arguments are not evidence" and that it was the trial court's "duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." The trial court also did not indicate that the jury was the reasonable person it should rely upon.

Although the prosecutor's statements are incorrect, the jury was instructed to follow the trial court's recitation of the law. The trial court indicated that adequate provocation must cause a reasonable person to act rashly or on impulse and that it was up to the jury to determine what constituted adequate provocation. This is consistent with the jury's role. See *Tierney*, 266 Mich App at 715 (noting that the determination of reasonable provocation is a question of fact for the jury). The trial court also instructed the jury to view the provocation through the lens of a reasonable person. Therefore, it was ultimately up to the jury to decide whether defendant's break-up with Sistos and her subsequent presence with the victim was adequate provocation. Under the objective standard as detailed by *Radtke* and *Sullivan*, the jury was tasked with determining whether a reasonable person would have been so adequately provoked under defendant's circumstances. Because jurors are presumed to follow their instructions, *Unger*, 278 Mich App at 235, it is presumed that the jury correctly applied the reasonable person standard instead of injecting itself into the role of defendant when it determined that there was not adequate provocation. Because there is no challenge to the jury instructions or the fact that the trial court did not define "reasonable person," and the overwhelming evidence suggesting premeditation and deliberation, we conclude that the prosecution's remarks do not warrant reversal.

Lastly, defendant argues that the trial court abused its discretion when it admitted a photograph of the scene over defense counsel's objection. We review preserved claims of evidentiary error for an abuse of discretion. See *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 483 (quotation marks and citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted).

MRE 401 defines relevant evidence as evidence "having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 402 provides that all relevant evidence is admissible unless otherwise prohibited by the United States or Michigan Constitutions, the rules

of evidence, or other rules adopted by the Supreme Court. MRE 403 prohibits the admission of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the cumulative evidence. In the context of MRE 403, "prejudice means more than simply damage to the opponent's cause." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). It means that evidence has an undue tendency to move the tribunal to decide on an improper basis such as an emotional bias. See *id*. Relevant considerations in determining unfair prejudice include whether the jury will give the evidence undue or preemptive weight and whether the use of the evidence is inequitable. See *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). Mere prejudice is insufficient to justify reversal of a conviction. *People v Albers*, 258 Mich App 578, 591; 672 NW2d 336 (2003). "Photographs are admissible if they are substantially necessary or instructive to show material facts or conditions. Photographs are not inadmissible merely because they may be gruesome and shocking. However, the trial court should exclude those that could lead the jury to abdicate its truth-finding function and convict on passion alone." *People v Anderson*, 209 Mich App 527, 536; 531 NW2d 780 (1995) (citations omitted).

The photograph in question depicts much more than what defense counsel described. People's Exhibit 21 depicts the entire driver's-side door, including large amounts of blood and the broken glass window where defendant's shots were fired through. This exhibit depicts the entirety of the crime scene. Although it was undisputed that defendant shot and killed the victim, defendant's state of mind was the relevant inquiry the jury was tasked to determine. People's Exhibit 21 was relevant to show defendant's state of mind because it portrays a large amount of blood, as well as a broken driver's-side window. Defendant waited for the victim to enter the car and close his car door before running up to the door and firing three shots through the window. This photograph also provided further support to testimony about the nature of the gunshot wounds, i.e., that the gun was fired on the opposite side of glass. "This evidence was relevant to the issue of premeditation and deliberation." *Id*. Because the photograph was probative of defendant's state of mind and allowed the jury to see the crime scene, its evidentiary value was not substantially outweighed by a danger of unfair prejudice. "All relevant evidence is prejudicial; only *unfairly* prejudicial evidence may be excluded." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011).

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto